UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIN REY ALDRIDGE,

    Petitioner,

v.

NOAH NAGY, *Warden*,

    Respondent.

Case No. 20-10886
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1]**

Darin Rey Aldridge is serving a six-to-20-year prison sentence after pleading no contest in Michigan state court to domestic violence and assault by strangulation. He filed a pro se habeas corpus petition under 28 U.S.C. § 2254. The petition claims that the state trial court erred by refusing to allow Aldridge to withdraw his plea before sentencing and that Aldridge's trial counsel was ineffective.

During its initial review of the case, the Court determined that Aldridge failed to properly raise his ineffective-assistance-of-counsel claim in the Michigan Court of Appeals and, thus, the claim was not exhausted. The Court informed Aldridge that it planned to dismiss his habeas petition without prejudice unless he notified the Court before August 4, 2020, that he wished to voluntarily dismiss his unexhausted claim and proceed with his sole exhausted claim. (ECF No. 3, PageID.55–56.) The Court also informed Aldridge of his options, including to request a stay or to have his petition dismissed without prejudice so that he may exhaust his unexhausted claim

in state court. *Id*. Aldridge responded by requesting that the Court reconsider its ruling on exhaustion or, in the alternative, allow him to voluntarily dismiss his unexhausted claim. (ECF No. 4, PageID.59.) The Court declined to reconsider its decision and dismissed the claim. (ECF No. 5.)

Following the Court's dismissal of Aldridge's unexhausted ineffective-assistance-of-counsel claim, the Warden filed an answer contending that Aldridge's habeas petition should be denied as meritless. (ECF No. 9.) In his reply, Aldridge appears to concede that his remaining claim lacks merit, and he now asks the Court to dismiss his habeas petition without prejudice so that he may return to state court to exhaust his ineffective-assistance-of-counsel claim. (ECF No. 11, PageID.732.)

Aldridge cannot turn back the clock now. He had ample opportunity earlier in this case to request a dismissal without prejudice or a stay of his habeas petition so that he could exhaust his claim in state court. Indeed, the Court explicitly informed him of this option. (ECF No. 3). Instead, Aldridge chose to proceed with his exhausted claim and waited until after the Warden responded to ask for dismissal of his petition. And he provides no justification for his delayed request other than the apparent realization that his exhausted claim is meritless. So, the Court denies Aldridge's request to dismiss his habeas petition and will address the merits of the exhausted claim.

And for the reasons that follow, the Court will deny Aldridge's habeas petition.

I.

On October 25, 2018, Aldridge pled no contest in Macomb County Circuit Court to one count of domestic violence, third offense, in violation of Mich. Comp. Laws § 750.81(4), and one count of assault by strangulation, in violation of Mich. Comp. Laws § 750.84(1)(b). (ECF No. 1, PageID.1, 22.) In what is known as a *Cobbs* agreement, the trial court agreed to cap Aldridge's minimum sentence at the bottom third of his minimum guidelines range.[1] (ECF No. 10-13, PageID.309, 313, 319.) Although the parties stated that they discussed a preliminary guidelines range, they did not place any specific range on the record. (*Id*. at PageID.307–308.) Aldridge agreed that his no-contest plea was not made in exchange for any promises other than the agreement that his sentence be capped per *Cobbs*. (*Id*. at PageID.316.)

The trial court ultimately calculated Aldridge's minimum guidelines range to be 38 to 152 months. (ECF No. 1, PageID.22, 44.) Before Aldridge was sentenced, he moved to withdraw his plea, claiming that he was promised a minimum guidelines range of 10 to 46 months. (ECF No. 10-13, PageID.334.) The trial court denied Aldridge's request and sentenced Aldridge as a fourth habitual offender to two concurrent terms of 72 to 240 months (six to twenty years) in prison. (*Id*. at PageID.341.)

In an application for leave to appeal to the Michigan Court of Appeals, Aldridge argued that the trial court abused its discretion and committed clear error by denying his request to withdraw his plea before sentencing. (ECF No. 1, PageID.2.) The Court

---

[1] *See People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993).

of Appeals denied Aldridge's application for lack of merit in the grounds presented. *See People v. Aldridge*, No. 348948 (Mich. Ct. App. June 25, 2019), *available at* (ECF No. 1, PageID.47.)

In an application for leave to appeal to the Michigan Supreme Court, Aldridge raised the same claim that he had presented to the Michigan Court of Appeals. He also raised a new ineffective-assistance-of-counsel claim based on his lawyer's advice to plead no contest to two offenses that allegedly arose from a single act. (ECF No. 1, PageID.2–3.) The Michigan Supreme Court granted Aldridge's "motion to add [an] additional issue," but denied leave to appeal because it was not persuaded that the questions Aldridge presented warranted review. *See People v. Aldridge*, 937 N.W.2d 652 (Mich. 2020).

Aldridge then came to federal court. He raised two grounds for relief in his habeas petition: (1) the trial court abused its discretion and committed clear error in denying Aldridge's motion to withdraw his plea before sentencing; and (2) his lawyer's advice to plead nolo contendere to two offenses arising from a single act violates the Double Jeopardy Clause and constitutes ineffective assistance of counsel. (ECF No. 1, at PageID.17.)

As discussed, the Court dismissed the second claim on exhaustion grounds. (ECF No. 5.) The Warden contests the remaining claim on the merits. (ECF No. 9.)

## II.

Before addressing the merits of Aldridge's exhausted claim, some background on the standard.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). To obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Pinholster*, 563 U.S. at 181. But if the state courts did not adjudicate a claim "on the merits," "AEDPA . . . does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

As a threshold matter, the Court must determine if the state courts adjudicated Aldridge's claim on the merits. The Michigan Court of Appeals denied Aldridge leave to appeal for lack of merit in the grounds presented. (ECF No. 1, PageID.47.) Because Supreme Court precedent makes clear that this type of one-

5

sentence summary order should be presumed to be an adjudication on the merits, AEDPA's deferential standard of review applies. *See Harrington*, 562 U.S. at 99–100.

**III**.

Aldridge argues that the trial court erred by denying his request to withdraw his no-contest plea before sentencing because he was allegedly promised a sentencing guidelines range that was lower than the range ultimately calculated by the trial court. (ECF No. 1, PageID.28.)

There is "no federal due process right to seek to withdraw [a] guilty plea." *Hynes v. Birkett*, 526 F. App'x 515, 521 (6th Cir. 2013). Unless a petitioner's no-contest plea "violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's no-contest [plea] is discretionary with the [S]tate trial court." *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). And "[i]t is well-settled that post-sentencing buyer's remorse is not a valid basis" to set aside an otherwise valid no-contest plea. *Meek v. Bergh*, 526 F. App'x 530, 536 (6th Cir. 2013) (cleaned up). Thus, the first question before the Court is whether Aldridge's plea agreement was constitutionally valid.

A plea agreement is valid when made "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[T]he defendant is required to understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights." *Fitzpatrick v. Robinson*,

6

723 F.3d 624, 639 (6th Cir. 2013). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady*, 397 U.S. at 755. Additionally, the defendant must be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

The state has the burden to show that the guilty plea was voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, (1969). This can be satisfied by a transcript of a proper plea colloquy in the state court proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact that the plea was proper. *Id*. at 326–27. And the petitioner bears a "heavy burden" to overturn that presumption of correctness. *Id*. at 328.

The state-court record here adequately shows that Aldridge's plea was voluntary, knowing, and intelligent. There is nothing to indicate that Aldridge was not mentally competent at the time of the plea. Aldridge confirmed he could read and write in English and was not under the influence of any drugs or medication when he entered his plea. (ECF No. 10-12, PageID.311.) The trial judge's plea colloquy also confirms that Aldridge was aware of the nature of the charges against him and the direct consequences of his plea. (*Id*. at PageID.311–316.) The transcript further shows that Aldridge's plea was not induced by threats, misrepresentations, or promises not

made on the record, and that he entered into the plea agreement freely and voluntarily. (*Id*. at PageID.314–316.) The trial court also properly informed Aldridge of the maximum possible sentence that could be imposed for each crime Aldridge was charged with. (*Id*. at PageID.313.)

Aldridge mainly challenges the voluntariness of his plea. He contends that he was promised, by his defense counsel and the prosecution, that he would receive a minimum sentence in the bottom third of a specific guidelines range of 10 to 46 months in exchange for his no-contest plea. (ECF No. 1, PageID.28.)

But the plea-colloquy transcript defeats this argument. The parties only agreed that Aldridge would receive a minimum sentence at the bottom third of the guidelines range that would ultimately be calculated by the trial court. (ECF No. 10-12, PageID.313.) Although the parties stated that they preliminarily scored and discussed the guidelines range, the trial-court record shows that the parties understood it was an estimate subject to change.

A close look at both the plea and sentencing transcripts reveals that the plea was voluntary. For example, the prosecutor stated at the plea hearing that "we did go through the preliminary guidelines, knowing that's what they are, preliminarily." (*Id*. at PageID.307–308.) The trial court and the prosecutor placed the terms of the plea agreement on the record, with no mention of the specific sentence Aldridge claims he was promised, and Aldridge acknowledged several times that this was the entire agreement. (*Id*. at PageID.307–308, 313, 318.) Again, Aldridge, his counsel, and the prosecutor all verified during the plea colloquy that they were not aware of

8

any threats, inducements, or promises made that were not on the record. (*Id.* at PageID.318.) Importantly, Aldridge also confirmed during the plea colloquy that no one, including the prosecutor and his defense counsel, promised him a specific sentence in return for his no-contest plea. (*Id.* at PageID.314.)

Further, any misunderstanding Aldridge could have reasonably had about the certainty of the preliminary guidelines range was cured by the trial court's plea colloquy. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (finding "the state trial court's proper colloquy . . . cured any misunderstanding [defendant] may have had about the consequences of his plea"). This colloquy confirmed that (1) Aldridge had not been promised a specific sentence in return for pleading no contest; (2) the only promise made as part of the plea agreement was that Aldridge's sentence would be capped at the bottom third of his sentencing guidelines range as calculated by the trial court; (3) no other promises had been made to induce Aldridge to plead no contest; (4) Aldridge was freely and voluntarily entering into the agreement; and (5) by pleading, Aldridge understood that he would be giving up any claims that his plea was a result of any promises or threats that he did not tell the trial judge about at the plea hearing. (ECF No. 10-12, PageID.313–316.) In sum, the trial judge's thorough plea colloquy ensured Aldridge was advised about the preliminary nature of the discussed guidelines range.

The sentencing hearing was consistent. There, Aldridge's counsel and the prosecution both stated that there was never a promise of a specific guidelines range. (ECF No. 10-13, PageID.335.) Further, defense counsel stated that although the

9

parties had initially scored the minimum guidelines as 10 to 46 months, he specifically advised Aldridge that the preliminary guidelines were estimates subject to change. *Id*. And the prosecutor stated, "there was never an agreement to a specific guidelines range." *Id*. Instead, according to the prosecutor, "[t]hat was the original estimate. Of course, [Aldridge's] additional pick up of another felony offense for domestic violence in another county has added 25 points we didn't expect when he was on bond." *Id*.

The plea colloquy taken with the statements of the prosecution and defense counsel at sentencing clearly indicate that Aldridge was never promised any specific guidelines range as enticement to plead no-contest. In fact, the record and Aldridge's own responses to the colloquy indicate that Aldridge entered his plea knowing that the preliminary guidelines were subject to change. As Aldridge made his plea knowingly and voluntarily, there was no violation of his constitutional rights.

But Aldridge also contends that a Michigan state-court rule gave him the right to seek to withdraw his guilty plea. *See* Mich. R. Crim. P. 6.310(B). Aldridge specifically argues that the judge's departure from the preliminary guidelines amounted to a modification of the *Cobbs* agreement, which entitled him to withdraw his no-contest plea. (ECF No. 1, PageID.23–25.)

Generally, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (internal quotation marks omitted). "It is true, however, that the Fourteenth Amendment's Due Process Clause can protect certain state-created rights." *Hynes v. Birkett*, 526 F. App'x 515, 520 (6th Cir. 2013).

10

To rise to the level of a federal due process violation, an error of state law must effectively "depriv[e] the defendant of fundamental fairness in the trial process." *Turpin v. Kassulke*, 26 F.3d 1392, 1399 (6th Cir.1994). "It is not enough for [Aldridge] to argue simply that he has certain state rights that are protected by federal due process. Instead, he must demonstrate that *Supreme Court precedent* has *clearly established* that the state rights he alleges are in fact protected by the Fourteenth Amendment's Due Process Clause." *Hynes*, 526 F. App'x at 520 (emphasis in original).

In *Hynes*, the Sixth Circuit considered an analogous habeas petition claiming a federal due process violation as a result of a trial court's alleged deprivation of the defendant's rights under the same Michigan plea withdrawal rule at issue here. *Id*. There, the defendant alleged that he had an oral agreement with the prosecutor after he entered his plea agreement but before sentencing, whereby the prosecutor promised to recommend a reduced sentence in exchange for the defendant's testimony in an unrelated homicide. *Id*. at 517. The prosecutor allegedly reneged on that promise, and the defendant maintained he should have been allowed to withdraw his guilty plea as a result. *Id*. The Sixth Circuit found that Rule 6.310(B)(2) did not give the defendant the right "to withdraw his *Cobbs* guilty plea for an alleged violation of a post-plea agreement with the prosecution," noting that the rule only applies when a judge refuses to comply with the terms of a *Cobbs* plea agreement or a prosecutor's sentencing recommendation that is on record. *Id*. at 521.

Similar to the plea in *Hynes*, Aldridge's plea agreement involved only the *Cobbs* agreement to cap his sentence at the bottom third of the minimum sentencing

11

guidelines—an agreement that the trial court complied with—and not any promise of a specific guidelines range. Indeed, Aldridge specifically denied the existence of a promise for a specific sentence during the trial judge's plea colloquy. (ECF No. 10-12, PageID.314.) Rule 6.310(B)(2), therefore, gives Aldridge no constitutional right to withdraw his *Cobbs* no-contest plea. Moreover, as the Sixth Circuit in *Hynes* stated there is "no clearly established federal law affording [Aldridge] the broad right to seek to withdraw his guilty plea for no particular reason." *Hynes*, 526 F. App'x at 520.

In sum, the state-court record plainly shows that the parties agreed that the preliminary guidelines they scored were subject to change and, therefore, were not part of the plea agreement. Aldridge agreed to plead no contest in exchange for a minimum sentence at the bottom third of the guidelines range calculated by the trial court and received that sentence. And the record unquestionably establishes that Aldridge's plea was knowing, intelligent, and voluntary.

## IV.

The trial court thus did not violate Aldridge's clearly established constitutional rights by refusing to allow him to withdraw his no-contest plea.

Accordingly, Aldridge's petition for a writ of habeas corpus is DENIED. A separate order on Aldridge's certificate of appealability and a separate judgment will follow.

SO ORDERED.

Dated: March 29, 2023

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE